# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**KIMBERLY EVERSON,**
**Personal Representative for the**
**Estate of Jamesel Robinson,**

     **Plaintiff,**

     **v.**

**MEDLANTIC HEALTHCARE GROUP,**

     **Defendant.**

**Civil Action No.  00-226 (JMF)**

## MEMORANDUM OPINION

This case was referred to me for all purposes including trial.  Currently pending before me for resolution is Defendants' Motion for Summary Judgment, which, for the reasons stated herein, will be granted.

## I.    BACKGROUND

Jamesel Robinson filed the present lawsuit alleging that defendant, her former employer, (1) unlawfully discriminated against her based on her age in violation of the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401 *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, (2) subjected her to a hostile work environment, (3) subjected her to a dangerous working condition, and (4) intentionally inflicted emotional distress.  Robinson claims that defendant's actions caused her to suffer from multiple health problems, including high blood pressure, migraine headaches, stress, and a lung disorder, which ultimately led her to stop working.  Since initiating the lawsuit, Robinson has passed away, but her daughter, Kimberly Everson, who is also the Personal Representative of her estate,

has succeeded her as plaintiff.  Defendant has moved for summary judgment on all claims
asserted in the Amended Complaint.

## II.    FACTS

Robinson was employed by defendant's Washington Hospital Center ("defendant" or "the
Hospital") from January 1971 through October 1999, when she stop working due to disability.
Amended Complaint ("Am. Compl.") ¶ 2.  She began her employment as a Junior Nurse's Aide
and, after other jobs within the Hospital, became a Financial Counselor in the Admitting
Department in 1996. Defendant's Memorandum in Support of Its Motion for Summary Judgment
("Def.'s Mem.") at 3.  As a Financial Counselor, Robinson was responsible for verifying
patients' demographic and insurance information. Plaintiff's Opposition to Defendant's Motion
for Summary Judgment ("Pl.'s Opp'n") at 10.  Robinson remained a Financial Counselor until
her departure in 1999. Am. Compl. ¶ 6.

When Robinson first became a Financial Counselor, her immediate supervisor was Kurt
Thorne. Def.'s Mem. at 3.  On January 15, 1998, Thorne issued Robinson a written reprimand for
a performance error related to the verification of a patient's insurance. Pl.'s Opp'n at 10.
Specifically, Thorne had instructed Robinson to work on a particular patient's case, but she failed
to work on the case for two to three days and, as a result of the delay, the insurance company
denied the patient's claim. Def.'s Mem. at 5.  Robinson believed that the reprimand was
unjustified on the ground that another Financial Counselor had started the case and she felt that
the other Financial Counselor should have been required to complete it. Pl.'s Opp'n at 10.  After
Thorne had assigned Robinson the case, she had asked him for two or three days to reassign the
case to the other employee, but he refused to do so. Def.'s Mem. at 5.  Robinson filed a grievance

under her union's collective bargaining agreement. <u>Id.</u> at 6.  Due to an error in applying the

collective bargaining agreement's progressive discipline process, the Hospital agreed to reduce

Robinson's discipline from a second step written warning to a first step conference report. <u>Id.</u>

Financial Counselors are part of the Admitting Department.  While Robinson was

employed as a Financial Counselor, the head of the Admitting Department was Susan Manselle.

Am. Compl. ¶ 12.  Robinson claims that, in 1998, Manselle came into her office, pointed a finger

in her face, accused her of being rude to a doctor's secretary, and then accused her of lying when

she denied being rude. Am. Compl. ¶ 12; Pl.'s Opp'n, Exh. 1 at 177-79.

On June 12, 1998, Thorne told Robinson and a co-worker, Ethlyn Muir, that they were

too old for the job and that it was for younger people.[1] Am. Compl. ¶ 8; Pl.'s Opp'n, Exh. 1 at

161.  At the time, Robinson was fifty-seven years of age.

On June 22, 1998, Thorne issued Robinson a written reprimand and a three day

suspension for failing to obtain pre-certifications on five patients' accounts within forty-eight

hours of the patients' admission, which allegedly resulted in a $150,000 loss to the Hospital.

Def.'s Mem. at 6.  Robinson believed that her reprimand was unfair on the ground that denials

are routine and that, although there were two pages of denials, her five denials were the only ones

resulting in discipline. Pl.'s Opp'n at 10.  Robinson filed a grievance and, due to another error in

---

[1] In its motion for summary judgment, defendant states that Throne's comment was made
on June 12, 1997.  This appears to have been in error because the parties have consistently
described the comment as having been made on June 12, 1998. Am. Compl. ¶ 8; Pl.'s Opp'n at
16.  Even the parties' recently filed Joint Pretrial Statement states that the comment was made in
1998.  The only source that the court can find describing the comment as having been made in
1997 is Robinson's deposition testimony. Pl.'s Opp'n, Exh. 1 at 161.  However, it is clear from
the transcript that, at the time her deposition was taken, Robinson was confused as to many dates,
in particular 1997 verses 1998.  Moreover, in other areas of the deposition transcript, Thorne's
comment is described as having occurred in 1998. Pl.'s Opp'n, Exh. 1 at 364-65.

applying the progressive discipline process, the Hospital reduced the reprimand to a second step written warning and revoked the suspension. Def.'s Mem. at 7.  Robinson was given full back pay for the three days that she was suspended. Id.

Robinson also claimed that Thorne refused to let her attend educational training classes and computer classes while allowing younger employees to attend the same. Am. Compl. ¶ 11. Robinson did not identify any of the younger employees that Thorne allegedly allowed to attend such trainings. Am. Compl. ¶ 11; Def.'s Mem. at 11; Pl.'s Opp'n at 12.

On July 8, 1998, Robinson met with Thorne for her annual employment evaluation. Def.'s Mem. at 7.  Thorne allowed his assistant and another Financial Counselor to sit in on the meeting. Am. Compl. ¶ 14; Pl.'s Opp'n, Exh. 1 at 117.  Robinson felt that this was an invasion of her privacy. Am. Compl. ¶ 14.

On November 24, 1998, Robinson's new supervisor, Jeff Joyner, issued her a reprimand and a three day suspension for failing to timely complete a patient's insurance verification. Def.'s Mem. at 8.  Robinson believed that the reprimand was unjustified on the ground that the reason she could not verify the insurance was because the patient's insurance information had not yet been "linked" by the Pre-Admitters. Am. Compl. ¶ 15.  Robinson filed a grievance, her suspension was rescinded, and she was reimbursed for the three days that she was suspended. Pl.'s Opp'n at 8, Exh. 1 at 347.

In July 1999, Joyner prohibited Robinson from selling pizza coupons for her granddaughter's school during working hours. Am. Compl. ¶ 16; Def.'s Mem. at 10.  Robinson claimed that Joyner orally reprimanded her for trying to sell the coupons and that, although Joyner had previously purchased items from both Robinson and other employees, she was the

4

only employee he reprimanded. Am. Compl. ¶ 16; Pl.'s Opp'n at 11.  According to the Hospital, Joyner was merely implementing an office-wide policy prohibiting employees from selling items during office work time. Def.'s Mem. at 10.

In September 1999, Manselle raised her voice to Robinson in front of other employees, shouting, "Robbie, we do not hold patients up, you will wear this!  you will wear this!".[sic]  This shall be attached to your name."[2] Am. Compl. ¶ 17.

During the summer months of 1999, the air conditioning unit in Robinson's office was leaking a black substance. Am. Compl. ¶ 28.  When Robinson and her office mates first noticed the leak, they informed Joyner of the problem. Def.'s Mem. at 9.  The Hospital informed Robinson that they were waiting for the necessary part to repair the unit. Id.  The air conditioning unit was not repaired until October 1999. Am. Compl. ¶ 28.  During her deposition, Robinson stated that she had no reason to believe that the Hospital was being untruthful when she was told that they were waiting for a part. Def.'s Mem. at 9.

On October 8, 1999, Robinson left work on disability due to high blood pressure. Pl.'s Opp'n, Exh. 1 at 225.  She did not return to work, id., and passed away on October 16, 2001. Def.'s Mem. at 2.

## III.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

---

[2] Plaintiff has not provided the court with any explanation as to the meaning of this quote.

of law." Fed. R. Civ. P. 56(c).  "To determine which facts are 'material,' a court must look to the substantive law on which each claim rests." Bobreski v. U.S. Envtl. Prot. Agency, 284 F. Supp. 2d 67, 72 (D.D.C. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "A 'genuine issue' is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action." Bobreski, 284 F. Supp. 2d at 72-73 (citing Celotex Corp. v. Cattrett, 477 U.S. 317, 322 (1986); Anderson, 477 U.S. at 248).

To prevail on a motion for summary judgment, a defendant must show that the plaintiff "fail[ed] to make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case, and on which [the plaintiff] will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor. Anderson, 477 U.S. at 255.  In defending against a motion for summary judgment, the plaintiff cannot rely solely on allegations and conclusory statements, but must present specific facts that would enable a reasonable jury to find in its favor. Green v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999).

**B.      Plaintiff's Age Discrimination Claim**

Both the ADEA and the DCHRA make it unlawful for an employer to discriminate against an employee because of that employee's age. 29 U.S.C. § 623(a)(1); D.C. Code § 2-1402.11(a)(1). Claims brought under the ADEA and DCHRA for which there is no direct evidence of discrimination are analyzed under the Title VII burden-shifting scheme developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).  See Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1155 (D.C. Cir. 2004); Hall v. Giant Food, Inc., 175 F.3d 1074, 1077 (D.C. Cir. 1999); Carpenter v. Fed. Nat'l Mortg. Ass'n, 165 F.3d 69, 72 (D.C. Cir. 1999).  Under McDonnell

Douglas, plaintiff must first establish a *prima facie* case of prohibited discrimination. Hall, 175 F.3d at 1077 (citing Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1988) (en banc)).  To establish a *prima facie* case, plaintiff must show (1) that Robinson was at least forty years of age, (2) that Robinson suffered an adverse employment action, and (3) some reason to believe that the adverse employment action was based on Robinson's age. Id. (citing Paquin v. Fed. Nat'l Mortg. Ass'n, 119 F.3d 23, 26 (D.C. Cir. 1997)); Bryant v. Brownlee, 265 F. Supp. 2d 52, 58 (D.D.C. 2003).  If plaintiff establishes a *prima facie* case, the burden "shifts to the [Hospital] to articulate legitimate, nondiscriminatory reasons for the challenged employment action" that, if believed by the trier of fact, would show that unlawful age discrimination was not the reason for the adverse action. Id. (internal citations omitted).  If the Hospital articulates such a reason, "the presumption of discrimination raised by the prima facie showing is rebutted and 'drops from the case.'" Id. at 1078 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 n.10 (1981)).  With no presumption of discrimination, the burden shifts back to the plaintiff to show that the proffered reasons were a pretext for age discrimination. Id. at 1078.

Defendant argues that plaintiff cannot establish a *prima facie* case of discrimination because she cannot show that Robinson suffered from an adverse employment action or that there is reason to believe that the purportedly adverse actions were because of Robinson's age.  I agree with defendant that plaintiff cannot meet her burden of establishing a *prima facie* case because I find that she has failed to allege any adverse employment action.

"[A]n employee suffers from an adverse employment action if he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible

harm." Forkkio v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2002) (citing Brown v. Brody, 199

F.3d 446, 457 (D.C. Cir. 1999)).   The Supreme Court has described a tangible employment action

as "a significant change in employment status, such as hiring, firing, failing to promote,

reassignment with significantly different responsibilities, or a decision causing a significant

change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998).   "Thus, '[w]hile

adverse employment actions extend beyond readily quantifiable losses, not everything that makes

an employee unhappy is an actionable adverse action.  Minor and even trivial employment actions

that an irritable, chip-on-the-shoulder employee did not like would otherwise form the basis of a

discrimination suit.'" Russell v. Principi, 257 F.3d 815, 818 (D.C. Cir. 2001) (quoting Smart v.

Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996)).   Applying this reasoning, "[a] reprimand that

amounts to a mere scolding, without any disciplinary action which follows, does not rise to the

level of adverse action." Childers v. Slater, 44 F. Supp. 2d 8, 20 (D.D.C. 1999).

        Plaintiff's allegations can be viewed as nine distinct incidents: (1) the January 15, 1998

reprimand; (2) the June 12, 1998 reprimand; (3) the November 24, 1998 reprimand; (4) the

reprimand about selling pizza coupons; (5) Manselle's accusation that Robinson was rude and

lied; (6) Manselle's shouting "Robbie, we do not hold patients up, you will wear this! You will

wear this!".[sic] This shall be attached to your name."; (7) Thorne's refusal to allow Robinson to

attend trainings; (8) the two visitors' attendance at Robinson's evaluation meeting; and (9) the

Hospital's failure to timely repair the faulty air conditioning unit.

         Robinson was reprimanded on four occasions.  First, on January 15, 1998, she received a

written warning.  That written warning was subsequently reduced to a step one conference report.

Second, on June 22, 1998, she was suspended for three days without pay.  Shortly thereafter, her

suspension was reduced to a second step written warning and she was paid for the three days of missed work.  Third, on November 24, 1998, she was again suspended for three days without pay. Shortly thereafter, this suspension was rescinded and she was paid for the three days of missed work.  Finally, in July 1999, she was orally reprimanded for selling pizza coupons.

Plaintiff argues that it is well accepted that disciplinary action constitutes an adverse employment action and that the fact that she was disciplined, regardless of the magnitude of the discipline, constitutes a tangible harm.  Indeed, it has been stated that a "reprimand that amounts to a mere scolding, without any disciplinary action which follows, does not rise to the level of adverse action." Childers, 44 F. Supp. 2d at 20.  However, not every disciplinary action constitutes an adverse employment action – only disciplinary actions that result in a tangible harm, such as a change in grade, salary, or other benefits, rise to the level of adverse employment actions. See Broderick v. Donaldson, No. 04-5404, 2006 WL 305505, *5 n.2 (D.C. Cir. Feb. 10, 2006) (disciplinary memo sent to plaintiff's file did not qualify as an adverse action because it did not affect plaintiff's grade, salary, duties, or responsibilities); Steward v. Evans, 275 F.3d 1126, 1136 (D.C. Cir. 2002).  Here, the only disciplinary action flowing from the reprimands was a step one conference report and a step two written warning.[3]

The conference report and written warning do not, without some showing of a resulting harm, constitute an adverse employment actions.  While suspension or termination would have constituted an adverse employment action, the fact that a conference report or written warning may increase the risk of suspension or termination does not transform such discipline into adverse

---

[3] Because Robinson was made whole for her two three-day suspensions, those suspensions cannot constitute adverse employment actions.

employment actions.  As the court of appeals has explained, "such an unrealized risk of a future

adverse action, even if formalized, is too ephemeral to constitute an adverse employment action."

Russell, 257 F.3d at 819-20 (plaintiff's temporary exposure to an increased risk of termination due

to a performance evaluation would not constitute an adverse employment action).  See also Santa

Cruz v. Snow, 402 F. Supp. 2d 113, 122 (D.D.C. 2005) (the possibility that warnings may be

reviewed in connection with applications for future promotions "is too attenuated to create the

requisite 'adversity'"); Brodetski v. Duffey, 141 F. Supp. 2d 35, 47 (D.D.C. 2001) ("Criticism of

an employee's performance unaccompanied by a change in position or status does not constitute

adverse employment action."); Milburn v. West, 854 F. Supp. 1, 14 (D.D.C. 1994) (a

memorandum to plaintiff's file stating that the next incident of insubordination would lead to

termination was not an adverse employment action because it did not result in any demonstrable

harm).  Moreover, "[a] mere warning of possible future disciplinary action . . . does not constitute

an independent adverse employment action [even if] the employer later followed through on the

warning." Santa Cruz, 402 F. Supp. 2d at 122.  "[T]o be considered an adverse employment

action, the warning must *itself* affect the terms, conditions, or privileges of [the plaintiff's]

employment." Id. (emphasis in original).  Here, plaintiff has made no showing, and indeed cannot

make a showing, that the conference report or the warning, in themselves, affected a term,

condition, or privilege of Robinson's employment.  Accordingly, I find that none of Robinson's

reprimands constitute adverse employment actions.

        Because Robinson's formal reprimands do not constitute adverse employment actions, it is

clear that neither can Manselle's harsh comments to Robinson, which were no more than

scoldings.  "[F]or verbal 'comments to rise to the level of adverse employment action, the conduct

must be so egregious as to alter the conditions of employment.'" Childers, 44 F. Supp. 2d at 20

(quoting Henry v. Guest Services, Inc., 902 F. Supp. 245, 252 (D.D.C. 1995)).  Although

Robinson may have felt that Manselle's comments were inappropriate, unjustified, and

embarrassing, as previously explained, "not everything that makes an employee unhappy is an

actionable adverse action." Russell, 257 F.3d at 818.

 Plaintiff has also failed to show how Thorne's refusal to allow Robinson to attend

trainings resulted in a tangible harm.  "Denial of a training opportunity on allegedly

discriminatory grounds can constitute an adverse employment action, but only if the denial

materially affects the plaintiff's pay, hours, job title, responsibilities, promotional opportunities,

and the like." Santa Cruz, 402 F. Supp. 2d at 127 (internal citations omitted) (no adverse

employment action where plaintiff failed "to show any legally cognizable adversity flowing from

the denial of the course").  See also Powell v. Castaneda, 390 F. Supp. 2d 1, 11 (D.D.C. 2005);

Nichols v. Billington, 402 F. Supp. 2d 48, 66-67 (D.D.C. 2005).  During oral argument, plaintiff

argued that lack of training could have affected Robinson's job performance.  Despite this

argument, plaintiff has pointed to absolutely no evidence that her job performance did in fact

suffer.  Moreover, plaintiff has not even identified the trainings Robinson was allegedly prevented

from attending.  Accordingly, plaintiff has failed to show any legally cognizable adversity flowing

from the denial of access to trainings and such denial does not constitute an adverse employment

action.

 The attendance of two additional employees at Robinson's annual evaluation could not

possibly constitute an adverse employment action.  All that plaintiff alleges is that Robinson

found it to be unnerving.  This is clearly not an adverse employment action.  As previously stated,

not everything that makes an employee unhappy is an actionable adverse action because, if that were the case, then trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit. Russell, 257 F.3d at 818.

Finally, plaintiff alleged that the Hospital knew that the air conditioning unit in her office was leaking a black substance, but did not repair it for three months. This allegation has nothing to do with "employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc., 524 U.S. at 761. Regardless, plaintiff has presented absolutely no evidence that the slow repair had anything to do with her age.

Because, as a threshold matter, plaintiff cannot establish a *prima facie* case, I will grant summary judgment in defendant's favor on plaintiff's age discrimination claim.

### C.     Plaintiff's Hostile Work Environment Claim

To prevail on a claim for discrimination based on a hostile work environment, plaintiff must show that "(1) [Robinson] was a member of a protected class; (2) subject to unwelcome harassment; (3) the harassment was based on membership in the protected class; [and] (4) the harassment was severe and pervasive enough to affect a term, condition or privilege of employment." Baloch v. Norton, 355 F. Supp. 2d 246, 259 (D.D.C. 2005) (citation omitted). In determining whether the alleged harassment is "severe and pervasive," the court considers the frequency and severity of the conduct, whether the conduct is physically threatening or merely offensive, and whether the conduct reasonably interferes with the employee's performance. Faragher v. Boca, 524 U.S. 775, 787-88 (1998). "To permit a jury to find that [Robinson] was subjected to a hostile work environment, plaintiff must show that [Robinson's] workplace was so

permeated with discriminatory intimidation, ridicule, and insult that it altered the terms and conditions of [her] employment." Rowland v. Walker, 245 F. Supp. 2d 136, 142 (D.D.C. 2003) (citations omitted).  As the Supreme Court has explained:

> These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a "general civility code." Properly applied, they will filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." (citing B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 175 (1992) (hereinafter Lindemann & Kadue) (footnotes omitted). We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment, and the Courts of Appeals have heeded this view.

Faragher, 524 U.S. at 788.

The facts as alleged by plaintiff do not even come close to satisfying this standard.  The conduct alleged by plaintiff consists of four reprimands made approximately every six months, two incidents of harsh words from Manselle, Thorne's comment about Robinson being too old for the job, visitors at Robinson's annual evaluation, lack of access to unspecified trainings, and a faulty air conditioning unit.  Reprimands and unpleasant bosses are not uncommon in the workplace.  Robinson's assertion that this conduct caused her to feel stressed is understandable, but that does not render the Hospital's conduct discriminatory harassment.  Other than the one incident where Thorne allegedly commented about Robinson's age, plaintiff has not presented even a scintilla of evidence that any of the other incidents were based on Robinson's age.  Accordingly, I cannot find that plaintiff has failed to describe a workplace that is so permeated with discriminatory intimidation, ridicule, and insult that it affected the terms and conditions of employment.  Accordingly, I will grant summary judgment in defendant's favor on plaintiff's

13

hostile work environment claim.

**D.      Plaintiff's Age Discrimination Claim Based Dangerous Working Condition**

Defendant argues that plaintiff's age discrimination claim based on a dangerous working condition created by exposure to the malfunctioning air conditioning unit is precluded by her workers' compensation claim. Def.'s Mem. at 2.  Defendant asserts that "Robinson previously litigated this very issue – whether her work environment was dangerous to her health – in her workers' compensation hearing," and that it was rejected by the Workers' Compensation Board due to insufficient evidence of causation. Id. at 28.  In response, plaintiff argues that defendant's knowledge of the malfunctioning air conditioning unit and its failure to correct the problem in a timely manner cannot be separated from her hostile work environment claim and that the Workers' Compensation Board did not consider the discrimination issues related to that claim. Pl.'s Mem. at 29-30.

The District of Columbia Workers' Compensation Act ("WCA") provides the exclusive remedy for any workplace injury that falls within its scope. D.C. Code § 32-1504(b); Tatum v. Hyatt Corp., 918 F. Supp. 5, 8 (D.D.C. 1994) (plaintiff's common law claims were precluded by the WCA).  "[T]he only injuries not covered by the WCA are those that are 'specifically intended by the employer to be inflicted on the particular employee who was injured.'" Clements v. Ace Cash Express, Inc., No. 04-2123, 2005 WL 1490005, at *1 (D.D.C. June 23, 2005) (quoting Grillo v. Nat'l Bank of Wash., 540 A.2d 743, 744 (D.C. 1988)).  Any injuries that plaintiff alleges as a result of Robinson's exposure to the air conditioning unit would fall squarely within the provisions of the WCA because the exposure occurred during the course of her employment and because plaintiff has no evidence that the Hospital specifically intended to harm Robinson via the

air conditioning unit.  Therefore, to the extent that plaintiff's dangerous working condition claim

is a free-standing claim, separate from her hostile work environment claim, it is precluded by the

WCA.

It appears, however, from plaintiff's summary judgment briefing that she may have

intended her dangerous working condition claim to be part and parcel of her hostile work

environment claim.  In opposing defendant's motion for summary judgment, plaintiff explains:

> This allegation is pendent to the plaintiff's claims of age
> discrimination and hostile work environment, as well as the claim
> of intentional infliction of emotional distress.  The fact that
> defendant knew of the malfunctioning condition of the air
> conditioning unit, and its inaction in correcting the problem in a
> timely manner, cannot be separated from the age-based hostile work
> environment claim.

Pl.'s Opp'n at 29.  To the extent that plaintiff's dangerous working condition claim is part of her

hostile work environment claim, I find that it is not precluded by the WCA because the issues

before the Workers' Compensation Board did not relate to plaintiff's hostile work environment

claim.  The issue of whether plaintiff's exposure to the faulty air conditioning unit was part of a

larger pattern of discrimination against Robinson is entirely different from the issues resolved by

the Workers' Compensation Board, which were limited to the following: (1) when did Robinson's

accidental injury (*i.e.* lung disease) occur, (2) whether Robinson's injury arose out of and in the

course of her employment, (3) whether there was a causal relationship between Robinson's

condition and her employment, (4) whether Robinson gave timely notice of her injury, and (5) the

nature and extent of Robinson's disability. Def.'s Mem., Exh. 1.  However, because I have already

found that plaintiff has not alleged conduct sufficient to support a claim for hostile work

environment, this holding has no practical effect and I shall grant summary judgment in

defendant's favor on plaintiff's dangerous working condition claim.

### E.    Plaintiff's Intentional Infliction of Emotional Distress Claim

Plaintiff claims that defendant's discriminatory conduct was so extreme and outrageous that it constitutes intentional infliction of emotional distress. See Am. Compl. ¶¶ 24-25.  In moving for summary judgment, defendant argues that the alleged conduct is not sufficiently extreme or outrageous to support a claim for intentional infliction of emotional distress, characterizing it as no more than a series of "petty oppressions and trivialities." Def.'s Mem. at 2, 33.  Defendant also argues that the claim is time-barred and pre-empted by Section 301 of the LMRA. Id.

To establish a claim for intentional infliction of emotional distress, plaintiff must show that (1) defendant engaged in extreme and outrageous conduct, (2) which intentionally or recklessly, (3) caused Robinson to experience severe emotional distress. Evans v. District of Columbia, 391 F. Supp. 2d 160, 170 (D.D.C. 2005); Kerrigan v. Britches of Georgetowne, 705 A.2d 624, 628 (D.C. 1997) (citing Bernstein v. Fernandez, 649 A.2d 1064, 1075 (D.C. 1991)). Under District of Columbia law, which is applicable in this case, the alleged conduct must be so "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Homan v. Goyal, 711 A.2d 812, 818 (D.C. 1998) (quoting Drejza v. Vaccaro, 650 A.2d 1308, 1312 n.10 (D.C.1994)).  "[I]n the employment context, the proof required to support a claim for intentional infliction of emotional distress is particularly demanding." Thompson v. Jasas Corp., 212 F. Supp. 2d 21, 28 (D.D.C. 2002) (quoting Lockamy v. Truesdale, 182 F. Supp. 2d 26, 38 (D.D.C. 2001)).  The District of Columbia has repeatedly explained that conflicts inherent to the

employer-employee relationship do not rise to the level of outrageous conduct. See, e.g.,
Kerrigan, 705 A.2d at 628 (the court granted summary judgment in defendant's favor because
targeting plaintiff for sexual harassment investigation, manufacturing evidence to establish a
false sexual harassment claim, and unjustifiably demoting plaintiff was attributable to employer-
employee relationship and, therefore, did not rise to level of outrageous conduct); District of
Columbia v. Thompson, 570 A.2d 277, 290 (D.C. 1990) (the court granted summary judgment
in defendant's favor because criticism in memos, abrupt changes in leave status, isolation from
other employees, and even an assault was not extreme or outrageous); Howard Univ. v. Best,
484 A.2d 958, 986 (D.C. 1984) (the court granted summary judgment in defendant's favor
because defendant's interference with plaintiff's professional responsibilities as department
chair was not extreme or outrageous).

        In the current case, the conduct alleged by plaintiff is inherent to the employer-employee
relationship.  Specifically, the alleged conduct revolves around the issuance of reprimands,
access to training, and the attitude of and tone used by certain supervisors.  Therefore, under
District of Columbia precedent, I find that defendant's alleged conduct is not sufficiently
extreme or outrageous to support a claim of intentional infliction of emotional distress and I will
grant summary judgment in defendant's favor with regard to this claim.[4]

## IV.    PLAINTIFF'S REQUEST FOR SANCTIONS

        In opposing defendant's motion for summary judgment, plaintiff asserts that defendant
should be sanctioned for filing its motion for summary judgment because, "[d]espite this

---

        [4] Because I have determined that defendant's alleged conduct was not sufficiently
extreme or outrageous, it is unnecessary to address defendant's pre-emption or statute of
limitations arguments.

Court's admonition to defendant's counsels about filing the same motion on the same issues which this Court has already ruled on, they went ahead and ignored the Court's admonition and repeated the same arguments previously raised in its first motion for summary judgment." Pl.'s Mem. at 32-33.  I find no grounds for sanctions.  Although there was substantial overlap between defendant's present motion for summary judgment and the one previously denied by Judge Roberts, in its current motion, defendant relied largely on evidence that was not available at the time the first motion was filed.  More importantly, defendant relied on the lack of evidence that existed after the completion of discovery.  Defendant's attorney's conduct was totally appropriate as an effective advocate for his client.

V.      **CONCLUSION**

For the forgoing reasons, I will grant summary judgment for defendant on all counts.  An order accompanies this memorandum opinion.


_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated: